UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY VORWERK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-2417-SPM |
| | ) |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security Administration (the "Commissioner"), denying the application of Plaintiff Timothy Vorwerk ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I.     FACTUAL BACKGROUND

At the hearing before the ALJ, held on May 20, 2016, Plaintiff testified as follows. Plaintiff sees a psychiatrist and a case worker for his mental problems. (Tr. 40-41). He testified that even with his medications, he experiences lack of concentration, numbness, and feelings of no self-

1

worth. (Tr. 41). He testified that all of his days are bad, but that there are periods of time within the day when he can cope with things. (Tr. 41). When he starts to have bad thoughts, he goes to sleep and basically hopes that he never wakes up. (Tr. 41). Plaintiff also has anxiety, which can cause him to shake, rock, and have racing thoughts. (Tr. 44). Plaintiff's medications cause side effects, including extreme drowsiness, feeling like a zombie, problems eating, shaking, and blurry vision. (Tr. 44). Plaintiff also has neuropathy in his feet, hands, and arms, for which he takes gabapentin. (Tr. 43). He also has shooting pain from a broken hip a couple of times a week. (Tr. 43).

Plaintiff lives in an apartment with a man who has cerebral palsy. (Tr. 47). He helps take care of the man in lieu of paying rent. (Tr. 47). That involves getting the man drinks, making him sandwiches, helping him pick things up, and helping him clean things up. (Tr. 48). Plaintiff is able to cook for himself and clean dishes. (Tr. 48). However, someone comes in to do the housework. (Tr. 41, 48). Plaintiff hardly ever leaves his room and sleeps at least 16 hours a day. (Tr. 41-42). Plaintiff has a case worker who takes him to his doctor's appointments, keeps track of his appointments for him, counsels him, and reviews his case. (Tr. 42). They meet for about an hour and she drives him back and forth to appointments. (Tr. 43).

With regard to Plaintiff's medical treatment records and the opinion evidence in the record, the Court accepts the facts as presented in the parties' statements of facts. The Court will discuss specific facts in the record as needed in the discussion below.

## II. PROCEDURAL BACKGROUND

On May 14, 2014, Plaintiff filed his application for SSI, alleging that he had been unable to work since December 14, 2012 due to major depressive disorder and neuropathy. (Tr. 157-65), His application was initially denied. (Tr. 95). Plaintiff filed a Request for Hearing by

Administrative Law Judge (ALJ) (Tr. 108). On December 4, 2015, Plaintiff amended his alleged onset date to May 8, 2013. (Tr. 187). After a hearing, the ALJ issued an unfavorable decision on July 20, 2016. (Tr. 7-17). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and on July 18, 2017, the Appeals Council denied the request for review. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

### III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if he is, then he is not disabled. 20

C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 416.920(e) & 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since May 13, 2014, the application date. (Tr. 12). The ALJ found that Plaintiff had the severe impairments of major depression, idiopathic neuropathy, and left him and femur fracture residuals, and that he was given the benefit of the doubt regarding the severity of his anemia. (Tr. 12). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 12). The ALJ found that Plaintiff had the following RFC:

> Since May 13, 2014, the claimant has had the residual functional capacity to lift, carry, push or pull twenty pounds occasionally and ten pounds frequently, sit six hours in an eight-hour workday, stand for six hours in an eight-hour workday, and walk for two hours in an eight-hour workday, but he has been unable to: climb ladders, ropes or scaffolds; balance, stoop, crouch, kneel, crawl or climb stairs or ramps more than occasionally; operate foot controls; or have any exposure to unprotected heights or hazardous machinery. He has been able to understand, remember and carry out at least simple instructions and non-detailed tasks, but the work must be performed in a low-stress environment ("low stress" being defined as involving only minimal changes in setting and duties). This constitutes a limited range of unskilled light work.

(Tr. 12-13). The ALJ found that Plaintiff was unable to perform his past relevant work as a groundskeeper and baker. (Tr. 16). However, relying on the testimony of a vocational expert, she found that a significant number of jobs existed in the national economy that Plaintiff could

perform, including mail sorter, marker II, and router. (Tr. 17). The ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 17).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on four grounds: (1) that the ALJ failed to accord adequate weight to the opinion of the claimant's treating physician, Dr. Coons; (2) that the ALJ erred by giving little weight to the opinion of Plaintiff's case worker, Yi Liu; (3) that the ALJ erred in finding that Plaintiff's depression does not meet the criteria of Listing 12.04; and (4) that the ALJ erred by failing to obtain an updated medical expert opinion regarding whether Plaintiff's impairments are medically equal to a listed impairment.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B. The Opinion of Plaintiff's Treating Physician, Dr. Coons

Plaintiff's first argument is that the ALJ failed to accord adequate weight to the opinion of his treating physician, Dr. Coons. In December 2015, Dr. Coons completed an RFC form for Plaintiff. (Tr. 527-31). He noted that Plaintiff had major depression with very little or no recent improvement and a Global Assessment of Functioning ("GAF") score of 40-45. (Tr. 527).[1] On a check-box form, he indicated that Plaintiff had symptoms including depression, lack of emotion, pervasive loss of interest, feelings of guilt or worthlessness, and pathological passivity. (Tr. 527). Dr. Coons found that Plaintiff had a "good" ability to remember work-like procedures; understand, remember, and carry out simple or detailed instructions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers without unduly distracting them; respond appropriately to changes in a routine work setting; interact appropriately with the general public; and maintain socially appropriate behavior.

---

[1] A GAF score is based on "the clinician's judgment of the individual's overall level of functioning." *Hudson v. Barnhart*, 345 F.3d 661, 662 n.3 (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). "GAF scores of 41 to 50 reflect '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Id.* (quoting *DSM-IV-TR* 34).

Although GAF scores may be relevant to the determination of RFC, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,'" and GAF scores are not dispositive. *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir.2010) (quoting 65 Fed. Reg. 50746, 50746–65, 2000 WL 1173632 (Aug. 21, 2000)).

(Tr. 528). However, he found that Plaintiff would have poor or no ability to maintain regular attendance and be punctual, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, and to set realistic goals or make plans independently of others. (Tr. 528). He indicated that Plaintiff's symptoms were severe enough to interfere with attention and concentration often; that he had a moderate inability to deal with work stress; and that he would likely be absent from work more than three days per month. (Tr. 531).

Dr. Coons found that Plaintiff had marked restrictions in activities of daily living, noting that he had exhibited marked difficulty in cleaning his residence and planning daily activities. (Tr. 529-30). He found that Plaintiff had marked difficulties in maintaining social functioning, noting that he had marked difficulty in cooperating with others, getting along with family, and participating in group activities. (Tr. 529-30). He found that Plaintiff had frequent deficiencies of concentration, persistence or pace, noting that he had marked difficulties in concentration, pace, ability to complete tasks in a timely manner, persistence in tasks, and independent functioning, and that he required much support and assistance. (Tr. 529-30). He also found that Plaintiff had had episodes of deterioration or decompensation in work or work-like settings once or twice, but he wrote "unknown" on the section of the form dedicated to explaining that opinion. (Tr. 529-30).

Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R.

§ 416.927(c)(2).[2] *See also Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.") (internal quotation marks omitted). However, a treating physician's opinion is not inherently entitled to controlling weight. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Goff*, 421 F.3d at 790 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ may also "discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). Where the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 416.927(c)(2)-(6). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir.2007)). It is the ALJ's duty to

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 416.920c(a). Throughout this opinion, the Court will refer to the version of the regulations that applies to claims filed before March 27, 2017.

9

resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

After review of the ALJ's decision and the record as a whole, the Court finds that the ALJ gave detailed reasons, supported by substantial evidence, for her decision to discount Dr. Coons' opinion. The Court first notes that the ALJ discussed Dr. Coons' opinions in detail and did incorporate some of Dr. Coons' opinions into the RFC. (Tr. 13-14). The ALJ limited Plaintiff to low-stress work involving only minimal changes in setting and duties, which accounts for Dr. Coons' opinion that Plaintiff had only a moderate ability to deal with work stress. The ALJ limited Plaintiff to jobs involving only simple instructions and non-detailed tasks, which is consistent with Dr. Coons' opinion that Plaintiff would not have difficulty performing such tasks.

To the extent that the ALJ did not adopt Dr. Coons' opinions, she gave reasons for doing so, and those reasons have support in the record. For example, the ALJ reasonably noted that in contrast to Dr. Coons' opinion that Plaintiff would have significant difficulties with attention and concentration, Dr. Coons' own treatment notes consistently show that Plaintiff's attention and concentration were "good" or "fair." (Tr. 14, 322, 325, 328, 354, 359, 405, 408, 411, 413, 414, 417, 420, 423, 434, 534, 539, 543, 547, 552, 568). Dr. Coons' opinions regarding Plaintiff's severe mental limitations are also somewhat inconsistent with his findings that Plaintiff consistently had normal language, logical and goal-oriented thought processes, normal memory, an average fund of knowledge, fair insight, and an absence of abnormal or psychotic thought processes. (Tr. 316, 319, 322, 325, 328, 354, 359, 405, 408, 411, 414, 417, 420, 423, 434, 534, 539, 543, 547, 552, 568). *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (inconsistency between treating

physician's treatment records and his functional assessment provides good reason for ALJ to discount physician's opinion).

The ALJ also reasonably found that Dr. Coons' opinion that Plaintiff had marked restrictions in activities of daily living was inconsistent with Plaintiff's reported ability to live independently and (as a form of rent payment) care for his roommate with cerebral palsy, as well as with Dr. Coons' own opinions that Plaintiff did not have marked difficulties in grooming, personal hygiene, paying bills, shopping, cooking, or using public transportation and had a good or fair ability to understand, remember, and carry out simple or detailed instructions. (Tr. 14, 47, 228, 437, 528, 538). *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("[A]n ALJ may discount or even disregard the opinion of a treating physician . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.") (quoting *Goff*, 421 F.3d at 790).

The ALJ also reasonably found that Dr. Coons' opinion that Plaintiff had marked limitations in social functioning (and related work-related limitations) was not consistent with Dr. Coons' own opinion that Plaintiff did not have marked difficulty exhibiting social maturity, getting along with friends and neighbors, communicating clearly and effectively, and responding to those in authority. (Tr. 14, 530). Dr. Coons' opinions regarding Plaintiff's difficulties in social functioning are also at odds with treatment notes frequently describing Plaintiff as pleasant and cooperative (Tr. 316, 319, 325, 328, 354, 359, 405, 408, 411, 414, 417, 420, 423), and with Plaintiff's own statement in his function report that he does not have any problems getting along with family, friends, neighbors, or others. (Tr. 227).

Additionally, Dr. Coons' treatment notes do not appear to provide any support for his opinion that Plaintiff could not maintain regular attendance and be punctual within customary

11

tolerance. There is no evidence that Plaintiff was late to, or failed to show up for, his appointments with Dr. Coons, and it is unclear why he would be incapable of being punctual and attending work. *See Davidson*, 578 F.3d at 842 (ALJ may discount a treating physician's opinion if it is not supported by the doctor's own treatment records).

Finally, the ALJ also considered and reasonably gave weight to opinion evidence from another expert whose opinion was inconsistent with Dr. Coons' opinion, finding it to be supported by the medical record. (Tr. 13). In July 2014, Dr. Raphael Smith reviewed the record and found that although Plaintiff might have difficulty with more complex tasks, he demonstrated the ability to carry out simple work instructions and routines with adequate concentration, persistence and pace for repetitive or less demanding tasks in settings that would not require frequent changes in routine. (Tr. 85-92). The ALJ reasonably found that these opinions were consistent with medical records indicating that although Plaintiff had depression and significant associated mental symptoms, he also generally had pleasant and cooperative behavior, normal language, logical and goal-oriented thought processes, fair or good attention and concentration, normal memory, a normal fund of knowledge, fair insight, and an absence of abnormal or psychotic thought processes. (Tr. 13).

The Court notes that although the ALJ did not explicitly discuss all of the factors listed in § 416.927(c) in evaluating Dr. Coons' opinion, she was not required to do so. *See Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform a factor-by-factor analysis of the 20 C.F.R. § 416.927(c) factors was not erroneous where the ALJ "explained his rationale in a manner that allowed the [court] to follow his line of reasoning"); *Derda v. Astrue*, No. 4:09–CV–01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 30, 2011) ("While an ALJ must consider all of the factors set forth in 20 C.F.R. § 404.1527(d), he need not explicitly address each of the

factors"). The ALJ cited 20 C.F.R. § 416.927 in her discussion and discussed several of the factors in her decision. The ALJ also "explained [her] rationale in a manner that allows the [Court] to follow [her] line of reasoning" *Nishke*, 878 F.Supp.2d at 984. No more was required to comply with the relevant regulations.

For all of the above reasons, the Court finds that the ALJ did not err in her assessment of Dr. Coons' opinion. The Court acknowledges that there is evidence in the record that tends to support Dr. Coons' opinion, including treatment notes indicating that Plaintiff had chronic mood problems, sleep issues, little energy or motivation, and GAF scores indicating serious symptoms. However, the ALJ's decision makes clear that she considered all of the relevant evidence in assessing Dr. Coons' opinion and it is not the role of this Court to reweigh that evidence. The ALJ's finding was supported by substantial evidence, and the Court cannot say that this decision was outside the "available zone of choice." *See Hacker*, 459 F.3d at 937-938.

### C. The Opinion of Plaintiff's Case Worker, Yi Liu

Plaintiff's next argument is that the ALJ erred by according little weight to the opinion of Plaintiff's case worker, Yi Liu, M.S.W. On June 15, 2016, Ms. Liu filled out an RFC check-box form in which she opined, *inter alia*, that Plaintiff's ability to do several aspects of unskilled work was "poor or none"; that Plaintiff had marked limitations in activities of daily living, extreme difficulties in maintaining social functioning, repeated deficiencies of concentration, persistence or pace, and repeated episodes of deterioration or compensation; that Plaintiff had a severe inability to deal with work stress; that Plaintiff's symptoms were frequently severe enough to interfere with attention and concentration; and that Plaintiff would be absent from work more than three days a month. (Tr. 599-603). She also opined that Plaintiff had several physical limitations. (Tr. 603). Plaintiff argues that the opinion of Ms. Liu cannot be discredited simply because she is not a

13

medical provider, and that it should have been given significant weight because it is consistent with the treatment records and the opinion of Dr. Coons.

The parties appear to agree that Ms. Liu is not an "acceptable medical source" under the relevant regulations, but instead is considered an "other source"—specifically, an other non-medical source. *See* 20 C.F.R. § 416.913(d). The Social Security Administration has recognized the importance of considering opinions from other non-medical sources:

> Opinions from "non-medical sources" who have seen the individual in their professional capacity should be evaluated by using [factors such as how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment]. Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a "non-medical source" who has seen the individual in his or her professional capacity depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.
>
> For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). In addition, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

Here, contrary to Plaintiff's suggestion that the ALJ merely discredited Ms. Liu's opinion because she was not a medical provider, it is clear from the ALJ's decision that she carefully

14

considered Ms. Liu's opinions in light of the rest of the evidence in the record and carefully weighed those opinions in light of several of the relevant factors. (Tr. 15). The ALJ reasonably noted that Ms. Liu has provided only minimal assistance to Plaintiff, a statement that is supported by the record. (Tr. 532, 536, 549-50, 561-62, 564-66, 573-74). The ALJ reasonably gave little weight to Ms. Liu's opinions regarding Plaintiff's physical limitations, which were outside of the scope of her professional expertise and which appeared to be based solely on Plaintiff's subjective reports. (Tr. 15). The ALJ did give some weight to Ms. Liu's opinion that Plaintiff had a poor reaction to stress, and therefore limited Plaintiff to only low-stress, unskilled work. (Tr. 15). However, the ALJ reasonably discounted Ms. Liu's opinions regarding Plaintiff's very severe social limitations, finding them inconsistent with the treatment notes discussed above showing that Plaintiff was generally pleasant and cooperative, with Plaintiff's reports that he got along with others and took care of his roommate, and with Ms. Liu's own notes indicating that she recommended that Plaintiff continue to socialize with others to gain support and pursue volunteer work or transitional employment. (Tr. 15, 47, 227, 437, 536, 549-50). Ms. Liu's notes also indicate that Plaintiff reported his community activities were limited "due to lack of income and transportation," which suggests that his allegedly disabling impairments were not entirely responsible for his limited social activities. (Tr. 550). The ALJ also reasonably discounted Ms. Liu's opinion that Plaintiff would have frequent problems with concentration, persistence, or pace, finding that opinion inconsistent with the treatment notes from Dr. Coons showing that he had fair or good attention and concentration, normal language, normal memory, lack of abnormal or psychotic thoughts, a normal fund of knowledge, and fair insight. (Tr. 15).

In sum, the ALJ's decision makes it clear that she explained the weight given to Ms. Liu's opinions, and the ALJ's decision allows the Court to follow her reasoning. The ALJ reasonably

discounted several of Ms. Liu's opinions as unsupported by, or inconsistent with, the other evidence in the record. The Court finds no error.

### D. The ALJ's Determination that Plaintiff's Depression Does Not Meet Listing 12.04

Plaintiff's third argument is that the ALJ erred by finding that Plaintiff's depression did not meet Listing 12.04 (Affective Disorders). Plaintiff bears the burden of showing that she meets all of the specified criteria of a listing. *See Boettcher v. Astrue*, 652 F.3d 860, 863-64 (8th Cir. 2011) (citing *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010)). To satisfy the requirements of Listing 12.04, Plaintiff must show either that the "Paragraph A" and "Paragraph B" criteria of the listing are satisfied, or that the "Paragraph C" criteria are satisfied. 20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.04 (2016).[3] The ALJ found that neither the Paragraph B nor the Paragraph C criteria were satisfied here. (Tr. 12).

Plaintiff's principal argument appears to be that if the ALJ had properly credited the opinion of Dr. Coons, she would have found that the criteria of Listing 12.04 were met. However, as discussed above, the Court finds that the ALJ properly discounted the opinion of Dr. Coons.

The ALJ's finding that the Paragraph B criteria were not satisfied was supported by substantial evidence in the record, including Plaintiff's medical treatment notes, Plaintiff's function report, and the opinion of the non-examining consulting psychologist, Dr. Smith. To satisfy the Paragraph B criteria, a claimant must show that her mental disorder results in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404,

---

[3] The Court's references are to the version of the Listing that was in effect as of the date of the ALJ's decision.

Subpt. P, App'x 1, § 12.04. The ALJ reasonably found that Plaintiff had only mild restriction in activities of daily living, noting that Plaintiff was able to live independently and care for his roommate as a form of rent payment and that Plaintiff's treating physician found he did not have marked difficulty grooming, tending to personal hygiene, paying bills, shopping, cooking, or using public transportation. (Tr. 12-16, 47, 437, 530). The ALJ reasonably found that Plaintiff had only mild difficulties in social functioning, noting that Plaintiff's behavior was generally described as pleasant and cooperative (Tr. 12-16, 316, 319, 325, 328, 354, 359, 405, 408, 411, 414, 417, 420, 423); and that Plaintiff's treating physician found that Plaintiff did not have marked difficulty exhibiting social maturity, getting along with friends and neighbors, communicating clearly and effectively, and responding to those in authority. (Tr. 12-16, 530). The ALJ reasonably found that Plaintiff had only moderate difficulties in concentration persistence, or pace, noting that Plaintiff's treatment notes consistently indicate that she had fair or good attention and concentration. (Tr. 322, 325, 328, 354, 359, 405, 408, 411, 413, 414, 417, 420, 423, 434, 534, 539, 543, 547, 552, 568). The ALJ also reasonably found that Plaintiff had experienced no repeated episodes of decompensation of extended duration, noting that the only hospitalization in the record was in May 2013 (prior to the application date) and occurred only after Plaintiff had taken drugs that he purchased from an individual in his doctor's waiting room and not from his physicians. (Tr. 14, 438, 503-04). The ALJ's findings with respect to the Paragraph B criteria were also consistent with the opinion of state agency psychological consultant Dr. Raphael Smith, who opined that Plaintiff had mild limitations in activities of daily living, moderate limitations in social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (Tr. 86).

The ALJ's finding that the Paragraph C criteria were not satisfied is also supported by substantial evidence in the record. (Tr. 12-16). To satisfy the Paragraph C criteria, the claimant must show the following:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, Subpt. P, App'x 1, § 12.04. After review of the record, the Court finds no evidence that Plaintiff had any repeated episodes of decompensation and no indication that such episodes would be likely to occur in the event of a minimal increase in mental demands or change in the environment. Although Dr. Coons referenced episodes of deterioration or decompensation in work or work-like settings once or twice, he did not explain why when given the opportunity to do so. (Tr. 529-30). The Court also finds nothing in the record to suggest that Plaintiff ever lived in a highly supportive living arrangement.

In sum, substantial evidence supports the ALJ's finding that Plaintiff does not satisfy either the Paragraph B or the Paragraph C criteria for Listing 12.04. Thus, Plaintiff's first argument is without merit.

### E. Whether the ALJ Erred by Failing to Obtain Updated Medical Evidence Regarding Whether Plaintiff's Impairments Medically Equal a Listed Impairment

Plaintiff's final argument is that the ALJ committed reversible error by failing to obtain an updated medical expert opinion regarding whether Plaintiff's impairments were medically equal to a listed impairment.

In determining whether an impairment medically equals a listing, the ALJ will "consider all evidence in [the claimant's] case record about [his or her] impairment(s) and its effects on [him or her] that is relevant to this finding," and will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 416.926(c). In her decision, the ALJ relied on the July 30, 2014 opinion of state agency psychological consultant, Raphael Smith, Psy.D., who found that the evidence did not support a level of impairment that would currently meet or equal a listing. (Tr. 87). In his brief, Plaintiff appears to be suggesting that the ALJ should have obtained a second opinion dated later in the relevant disability period. Plaintiff cites SSR 96-6p, which states that an ALJ must obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-*4 (July 2, 1996)

Plaintiff's argument is without merit. Plaintiff offers no argument as to why an updated opinion regarding equivalence would be necessary in this case, and it is not apparent to the Court why one would be necessary. Plaintiff does not identify any specific findings in the medical records that call into question Dr. Smith's opinion with regard to medical equivalence. The ALJ carefully considered both Dr. Smith's opinion and the medical treatment and opinion evidence dated after that opinion, and the ALJ reasonably credited Dr. Smith's opinion. The Court finds no error.

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate judgment will be entered in accordance with this Memorandum Opinion.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018.